1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

$32,000 IN UNITED STATES CURRENCY,

        Defendant.
_____/

No. C 05-5167 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion for Default**
**Judgment; Claimant's Motion to**
**Vacate Entry of Default**

        On December 13, 2005, the United States brought this judicial forfeiture action for $32,000 seized incident to the search of a vehicle driven by Sergio Enrique Ferrey-Gomez (the "claimant"). Ferrey-Gomez filed a contest to the forfeiture action on September 12, 2005. Now, before the court is plaintiff's motion for default judgment and claimant's motion to vacate entry of default.  At oral argument, the court requested supplemental briefing from the parties on the appropriate standard for determining culpability for the purpose of setting aside an entry of default. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

        In June of 2005, the Drug Enforcement Administration ("DEA") was undergoing an investigation of an individual (Pong Lin Liu) believed to be a major trafficker in controlled substances. On June 28, 2005 Ferrey-Gomez arrived at the property of Pong Lin Lui and the two individuals were observed secreting a number of bags in the trunk of Ferrey-Gomez's vehicle. The

1   two individuals drove (in Ferrey-Gomez's car) to an address which police believed to be a stash

2   house for Pong Lin Lui.  Subsequent to this, the police placed Ferrey-Gomez under surveillance.

3   Later on that same afternoon, after a traffic stop for "cutting across all three lanes of traffic without

4   signaling," see Complaint ¶ 10, the police searched Ferrey-Gomez's vehicle and discovered $32,000

5   in the trunk.

6          When questioned by the police as to the origins of the money, Ferrey-Gomez asserted that he

7   obtained the funds from his real estate management company, La Rubia.  However, the police

8   determined that the articles of incorporation for La Rubia had expired two years earlier in 2003.

9   Moreover, it appeared that Ferrey-Gomez had obtained a loan fraudulently in January of 2005 for

10  $650,000 using this same property.  On that loan application, Ferrey-Gomez claimed that property

11  managed by La Rubia was generating a monthly rental income of approx $7,000.  However, in the

12  tax years from 2000–2004, Ferrey-Gomez either did not file any tax returns or did not report any

13  income, except when he claimed a significant loss.  On November 10, 2005, the government filed an

14  indictment against Ferrey-Gomez for knowingly making a false statement that the $32,000 in the

15  trunk of his vehicle was from La Rubia.

16         Prior to this, on August 12, 2005, the DEA issued a notice of forfeiture for the $32,000.  On

17  September 12, 2005, Ferrey-Gomez filed a claim to contest the forfeiture.  See United States' Opp.

18  to Mot. for Stay, Exh. B.  On December 13, 2005 the government filed this forfeiture action.  On the

19  same day, the government also published a notice of forfeiture, noting that any individual seeking to

20  contest the forfeiture is required to file a verified statement within thirty days.  On December 16,

21  2005, the government served Ferrey-Gomez at his last known address and on December 27, 2005,

22  the government received a signed return receipt from Ferrey-Gomez.  Kenney Dec. ¶¶ 3–4, Exh. B.

23  The government also served the attorney representing the individuals who owned the car in which

24  the $32,000 was found (Ms. Childs) with the complaint.  Childs contacted the government

25  requesting an extension of time and was told to direct her query to the court.  Neither Childs nor

26  Ferrey-Gomez made any filings in response to the December complaint.  Kenney Dec. ¶¶ 5–7.

27

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Ferrey-Gomez contends that the reasons for his failure to file an answer are twofold.  First,

2    Ferrey-Gomez asserts that because he was represented by two different lawyers—Mr. Larry Koncz,

3    who had filed the administrative claim to contest the forfeiture, and Mr. Garrick Lew, who was

4    handling claimant's criminal indictment—there was a misunderstanding between the lawyers over

5    who was actually representing the claimant in the forfeiture action.  Neither of his lawyers was on

6    the service list and thus neither received any of the court filings directly.  Nonetheless, current

7    counsel-of-record Lew asserts that he "received periodic information from Ferrey-Gomez about the

8    status of the case." Claim.'s Rep. To Government's Opp. to Mot. to Stay, at 2:25–3:1.  According to

9    Lew, however, it was only when he received the motion for default judgment that he realized that

10   Ferrey-Gomez was not represented. Id. at 3:1–3.  Claimant also asserts that during this period he

11   "continued to believe that Koncz would be handling the forfeiture action and forwarded whatever

12   paperwork [he] received to him." Ferry-Gomez Dec. at 1:24–25.  In any event, claimant notes that

13   "[a]t some point," after realizing that Lew and Koncz had not determined whom between them

14   would be handling the forfeiture action, claimant "brought the matter to Mr. Lew's attention."

15   Ferry-Gomez Dec. at 2:2–3.

16   Second, at oral argument, claimant additionally asserted that the failure to respond was also

17   due to the fact that Ferrey-Gomez was in Nicaragua from February 18, 2006 until April 24, 2006,

18   attending to business.  It is of note that there is no actual mention made of this fact in claimant's

19   declaration, submitted as an attachment to his supplemental briefings.  Rather, an ex parte

20   application for modification of an international travel order issued on March 27, 2006 has been

21   submitted in support of claimant's assertion that he was in Nicaragua from February 18, 2006 until

22   April 24, 2006.

23   On February 2, 2006, the government filed a motion for entry of default and the clerk entered

24   default on February 6, 2006.  On March 17, 2006, the government moved for default judgment.  A

25   week later the case was re-assigned to this court and on March 28, 2006 an amended motion for

26   default judgment was filed by the government.  There was no response by Ferrey-Gomez after the

27   motion for entry of default, after the clerk entered an entry of default and even after the government

28

3

1    filed a motion for default judgment on March 17, 2006.  It was only on April 6, 2006, two months

2    after the entry of default and four months after the filing of the complaint, that claimants made any

3    response to the December complaint, filing a motion to stay the forfeiture proceedings pursuant to

4    18 U.S.C. section 981(g)(2).  In its opposition to this motion to stay, the government contends, and

5    Ferrey-Gomez concedes, that the motion is essentially a motion to vacate the February 6, 2006, entry

6    of default.

7

8    LEGAL STANDARD

9         A court may grant a motion to vacate an entry of default for "good cause."  See Fed. R. Civ.

10   Pro. 55(c).  The "good cause" standard governing the vacation of an entry of default is the same as

11   the "excusable neglect" standard governing the vacation of a default judgment.  TCI Group Line Ins.

12   Plan v.  Knoebber, 244 F.3d 691, 696 (9th Cir.  2001).  Under Federal Rule of Civil Procedure

13   60(b)(1), a court may set aside a default judgment because of mistake, inadvertence, surprise or

14   excusable neglect.  A court has discretion to deny a motion to set aside a default judgment if (1)

15   defendant's culpable conduct led to the default, (2) defendant has no meritorious defense, or (3)

16   plaintiff would be prejudiced if the judgment is set aside.  Franchise Holdings II, LLC, v.

17   Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004).  The burden of

18   demonstrating the foregoing is borne by the party seeking to vacate the entry of default or the default

19   judgment.  TCI Group, 244 F.3d at 696; Cassidy, 856 F.2d at 1415.  This "tripartite test is

20   disjunctive," Cassidy v. Tenorio, 856 F.2d 1412, 1415 (9th Cir. 1988), thus only one of these factors

21   need be present to justify denial of a Rule 60(b) motion.  See also Franchise Holdings, 375 F.3d at

22   926; Hammer v. Drago (In re Hammer), 940 F.2d 524, 526 (9th Cir. 1991).

23        Nonetheless, the Ninth Circuit has held that default judgments are "appropriate only in

24   extreme circumstances" and that "a case should, whenever possible, be decided on the merits."  TCI

25   Group, 244 F.3d at 696 (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).  There is a strong

26   policy disfavoring default judgments and thus Rule 60(b) is properly conceived of as essentially

27   "remedial in nature," to be liberally applied.  Id.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

DISCUSSION

Claimant asserts that (1) his conduct was not culpable, (2) he has a meritorious defense and (3) the vacation of the entry of default would pose no prejudice to plaintiff.  The court considers each of these claims in turn.

I.      Culpability

There is a split in Ninth Circuit authority over the applicable standard to use for the culpability prong of the "good cause"/"excusable neglect" inquiry.  On the one hand, if there is receipt of actual or constructive notice of the filing of an action and defendant fails to answer, then the Ninth Circuit has found that this is, in itself, indicative of culpability and an appropriate basis upon which to deny a motion to vacate.  Franchise Holdings II, 375 F.3d at 926; Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir. 1988) (quoting Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987)).

However, under the line of cases culminating in the Ninth Circuit's holding in TCI Group,[1] courts have held that in addition to receiving notice of a filing there must be a showing that defendant *intentionally* failed to answer.  See, e.g., Alan Neuman Prods.  Inc. v. Albright, 862 F.3d 1388, 1392 (9th Cir. 1988); Gregorian v. Izvestia, 871 F.2d 1515, 1522 (9th Cir. 1989).  In TCI Group, the Court specifically rejected the notion that a mere failure to respond mandated a finding that there was culpability—noting that under recent Supreme Court precedent and prior Ninth Circuit authority, excusable neglect "encompasses simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  TCI Group, 244 F.3d at 697 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).  In other words, although an omission may be "intentional" in the traditional sense, if

> defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process[, then it] is not 'intentional' under [Ninth Circuit] default cases, and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.

TCI Group, 244 F.3d at 697 (emphasis in original).

Claimant disputes that there is any split in the Ninth Circuit.  He contends that since the Ninth Circuit in TCI Group made explicit reference to the equitable considerations outlined in the Supreme Court's Pioneer Investment decision, it, and not Franchise Holdings II, is controlling.  In

UNITED STATES DISTRICT COURT
For the Northern District of California

1    support of this contention, claimant points to two Ninth Circuit decisions: Briones v. Riviera Hotel

2    & Casino, 116 F.3d 379, 381 (9thh Cir. 1997) (vacated and remanded district court decision denying

3    Rule 60(b) relief, noting that Pioneer Investment had changed the Ninth Circuit law with respect to a

4    determination of "excusable neglect") and Bateman v. United States Postal Serv., 231 F.3d 1220,

5    1224 (9th Cir. 2000) (reversed and remanding district court decision denying a motion to vacate a

6    default that did not rely on the equitable factors adopted by the court in Briones). According to

7    claimant, the Pioneer Investment/Briones/TCI Group standard is an equitable one, balancing factors

8    such as prejudice to the opposing party, the reason for delay, length of delay, and whether the

9    movant acted in good faith. See Pioneer Investment, 507 U.S. at 395 (noting that "[b]ecause

10   Congress has provided no other guideposts for determining what sorts of neglect will be considered

11   'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all

12   relevant circumstances surrounding the party's omission"); see also Franchise Holdings II, 375 F.3d

13   at 927 (noting that "excusable neglect is an equitable concept").

14       It is true that TCI Group's analysis, proposing a more equitable approach to Rule 60(b)

15   determinations than that outlined in Franchise Holdings, comports more with that of the Supreme

16   Court in Pioneer Investment.[2]  However, this is ultimately of no help to claimant.  As discussed

17   below, under either line of cases, the court finds that claimant has not met his burden of

18   demonstrating a lack of culpable conduct.

19       It is clear that pursuant to Franchise Holdings, claimant's actions—consisting of a failure to

20   meet any of the filing deadlines—were intentional and culpable.  Under TCI Group, although the

21   court found that mere failure to respond to a complaint is not culpable conduct, the court also found

22   that a defendant's conduct was "typically" culpable where, as here, "there is *no explanation* of the

23   default [to demonstrate that the omission was] inconsistent with a devious, deliberate, willful, or bad

24   faith failure to respond." TCI Group, 244 F.3d at 698 (emphasis added).  Recent decisions in this

25   Circuit have denied motions to vacate default judgments for precisely this reason. See, e.g., United

26   States v. $30,790, Memorandum & Opinion, slip op., No. 05-3646 TEH (N.D. Cal. Apr. 5, 2006),

27   *appeal docketed*, No.06-15909 (9th Cir. May 12, 2006) (denying claimant's motion to vacate an entry

28   of default and granting plaintiff's motion for default judgment since under either line of cases, the

     absence of a credible explanation rendered defendant's conduct culpable); Homefront, Inc. v.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   <u>Cashmere Crafts, Inc.</u>, No. C 05-0597 PJH, 2005 WL 3369988 * 7 (N.D. Cal. Dec. 12, 2005)

2   (Hamilton, J.) (denying defendant's motion to vacate an entry of default and granting plaintiff's

3   motion for default judgment because defendant did not provide a "credible, good-faith explanation"

4   of his failure to answer and thus was unable to demonstrate that the default was "not the result of his

5   own knowing failure to respond to the complaint.").

6          Further, the <u>TCI Group</u> court placed particular emphasis on the demonstrated legal

7   sophistication of the party seeking relief under Rule 60(b), noting that a

8          defaulting party's general familiarity with legal processes or consultation with lawyers at the
        time of default [is] pertinent to the determination whether the party's conduct in failing to
9          respond to legal process was deliberate, willful, or in bad faith . . . . It is fair to expect that
        individuals who have previously been involved in litigation or have consulted with a lawyer
10         appreciate the consequences of failing to answer and do so only if they see some advantage
        to themselves.

11  <u>TCI Group</u>, 244 F.3d at 699 n.6.

12         In the present action, none of the reasons offered by claimant persuade this court that his

13  failure to respond was not deliberate, willful or in bad faith.  Ferrey-Gomez does not assert that he

14  did *not* have notice of the filing of the action, the entry of default, the motion for default or the

15  amended motion for default.  Rather, he contends that he was out of the country for part of the time

16  that this matter was pending.  However, claimant was only out of the country from February 18,

17  2006 until April 24, 2006—in other words he was still in the country at the time of the plaintiff's

18  motion for default on February 2, 2006 and the clerk's entry of default on February 6, 2006.  Indeed,

19  it is unclear from the ex parte order submitted by claimant at exactly what point claimant left the

20  country.  It is conceivable that he left the country after the motion for default judgment was filed on

21  March 17, 2006 since his request to extend his leave was not filed until March 27, 2006.

22         Further, claimant contends that both his lawyers, believing the other lawyer was defending

23  the claimant in the forfeiture action, failed to realize that an answer had not been filed.  However,

24  claimant asserts in his papers as well as in his declaration that he passed on all the information that

25  he received to at least one of his lawyers.  Ferrey-Gomez's assertion that neither of his attorneys was

26  aware that he was not represented in the matter or that an answer had yet to be filed is simply not

27  credible.  It is unclear why, if these lawyers were receiving periodic updates, they would not have

28  learned of the motion for entry of default and the entry of default.  At the point when the entry of

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1   default was filed on February 2, 2006, the claimant, who was still in the country, as well as both

2   lawyers were on notice that an answer had not been timely filed and that the action was not being

3   adequately defended.  Stated differently, even if the lawyers had genuinely been confused about

4   Ferrey-Gomez's representation, neither of claimants assertions provide a credible account for the

5   failure to file any response between the filing of the initial complaint and the motion for entry of

6   default on February 2, 2006.  From that date onwards, neither lawyer could feign ignorance that the

7   matter was being handled by the other.  Further, by his own admission, attorney Lew was aware of

8   the motion for default judgment that was filed on March 17, 2006, and yet no explanation is offered

9   for his failure to seek an extension of time immediately or to file a response.  A full month passed

10  before the current motion to stay the action was filed.

11          Additionally, Ferrey-Gomez is not, unlike the defendant in TCI Group, without legal

12  experience.  As noted by plaintiffs, he had already filed a claim in response to the notice of seizure

13  filed by the DEA and is thus familiar with the legal process.  In addition, he has access to the legal

14  advice and services of two separate lawyers.  Ferrey-Gomez has not provided the court with any

15  credible reason why he, himself, did not comply or direct his lawyers to ensure he complied with the

16  filing deadlines.

17          The recent United States v. $30,790 decision by Judge Henderson of this Court is on all fours

18  with the present action.  In that case, claimant, seeking to vacate an entry of default in a forfeiture

19  action,  asserted that she was not legally sophisticated and was unable to retain counsel before entry

20  of default was entered.  The court found this unpersuasive as claimant had access to a lawyer before

21  the filing deadline and had presented no reason why she did not seek an extension or file a simple

22  claim.  The claimant in this action has had access to not one but two lawyers, has already had

23  significant experience with the legal system and also has not provided any credible explanation for

24  his filing omissions from December 2005 until February 24, 2006.

25          The court finds that the absence of any good faith explanation for the delay and the relative

26  legal sophistication of the claimant weigh in favor of a determination that claimant's actions are

27  culpable.  There is no indication that claimant was experiencing any personal difficulties of the type

28  of the defendant in TCI Group.  The omission appears to be nothing more than an intentional failure

to respond to the complaint— suggestive of an intent to manipulate the legal process.  Claimant's

1   failure over a period of four months to seek an extension or otherwise file an answer is culpable

2   conduct.

3

4   II..      Meritorious Defense

5          The Ninth Circuit has held that to demonstrate the existence of a meritorious defense, a party

6   must offer up more than mere conclusory assertions but "must present specific facts that would

7   constitute a defense" if the litigation was permitted to proceed.  TCI Group, 244 F.3d at 700 (quoting

8   Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969)).  "A mere denial without facts to support it is not

9   enough to justify vacating a default or default judgment."  Franchise Holdings, 375 F.3d at 926

10   (quoting Madsen, 419 F.2d at 6) (internal citations omitted).   However, the Ninth Circuit has noted

11   that the burden on the party moving to vacate a default judgment "is not extraordinarily heavy; the

12   only requirement is that "a sufficient defense is assertible" and litigation of the claims would not be

13   "a wholly empty exercise."  TCI Group, 244 F.3d at 700.

14          In the present action, claimant asserts that he can demonstrate that the $32,000 was not

15   derived from narcotics trafficking but working capital for his business.  However, claimant offers no

16   actual facts in support of this assertion, arguing that he is unable to fully disclose the factual details

17   of this defense without waiving his  Fifth Amendment privilege. The same sum of money is the basis

18   of the government's criminal charges against him.  Additionally, claimant contends that he will be

19   asserting defenses based on several alleged constitutional violations: first, the currency was obtained

20   through an illegal search and seizure in violation of the Fourth Amendment; second, the forfeiture is

21   a disproportionate penalty for the alleged offense in violation of the Eighth Amendment; and third,

22   the absence of a pre-seizure hearing violated his due process rights.   Although the burden of

23   establishing a meritorious defense is not a high one, the court finds that these proposed denials

24   constitute no more than mere denials offered without a shred of factual support.  See, e.g.,

25   Homefront, , 2005 WL 3369988 * 7 (where the court found insufficient a mere allegation of non-

26   infringement without any actual facts to demonstrate that there was a legitimate defense).  In

27   contrast, see TCI Group, 244 F.3d at 700–01, where in opposition to a motion for default—filed by

28   insured's mother-in-law after insured failed to answer a cross-complaint seeking to obtain half of a

disputed insurance policy— the opposing party alleged that because she already had received more

UNITED STATES DISTRICT COURT
For the Northern District of California

9

UNITED STATES DISTRICT COURT
For the Northern District of California

than half of the total assets, the moving party would not be entitled to any further share of the disputed policy in a community property state.  These factual allegations were found to be sufficient by the TCI Group court.  Claimant has not met his burden of demonstrating the existence of a potentially meritorious defense.  This factor weighs in favor of granting plaintiff's motion for default judgment.

III.    Prejudice

The relevant question, in determining prejudice is "whether the plaintiff's ability to pursue his claim will be hindered."  TCI Group, 244 F.3d at 701.  Thus, in order to be prejudicial, the granting of a motion to vacate a default judgment "must result in greater harm than simply delaying resolution of the case."  Id.  There is no indication that the government would be prejudiced by vacating the entry of default and adjudicating the case on its merits.  Thus, this factor weighs in favor of granting the motion to vacate the entry of default.

IV.    Summary

Although, a culpability finding alone could support a denial of claimant's motion, it is of note that claimant has also failed to establish that he has a meritorious defense.  In other words, two of the factors that courts are directed to consider in a Rule 60(b) determination support a finding that claimant's actions do not constitute excusable neglect.  In balancing the equitable considerations outlined by the Court in TCI Group/Briones, this court finds that the absence of any good faith explanation for claimant's delay in responding to repeated notices, the relative legal sophistication of claimant as well as the four month delay in filing a response, all weigh in favor of denying claimant's motion to vacate the entry of default and granting plaintiff's motion for default judgment. As discussed *supra*, claimant's omission appears to be nothing more than an intentional failure to respond to the complaint by an individual who "appreciate[s] the consequences of failing to answer and do[es] so only [because] . . . of some advantage to [himself]."  TCI Group, 244 F.3d at 699 n.6. Although the court is cognizant of the strong policy favoring adjudication on the merits, the relevant equitable factors do not support relief under Rule 55(c) or Rule 60(b).  The court finds that claimant has not demonstrated that there is good cause to set aside the entry of default.   Claimant's conduct is

1 not excusable neglect but intentional and culpable.  Plaintiff is entitled, therefore, to default

2 judgment.

3

4 CONCLUSION

5      For the foregoing reasons, the court hereby DENIES claimant's motion to vacate the entry of

6 default and GRANTS plaintiff's motion for default judgment.

7

8

9      IT IS SO ORDERED.

10

11

12 Dated: July 6, 2006

MARILYN HALL PATEL
13                                                                         District Judge
United States District Court
14                                                                         Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

11

**ENDNOTES**

1.  In <u>TCI Group</u>, the Court reversed and remanded, finding no culpability where a widow who was taking antidepressants, selling her home and moving with her small children across the country, neglected to meet filing deadlines. The Court noted that it was merely "a case where a party unfamiliar with the legal system defaulted at a time of extreme personal difficulty." <u>TCI Group</u>, 244 F.3d at 699.

2.  Indeed, the Court specifically mentions these "<u>Pioneer Investment</u> factors" in its discussion of why despite the weak reasons offered by defendant for the delay, the Court in <u>Bateman</u> was "not preclude[d from] a finding of 'excusable neglect.'" <u>TCI Group</u>, 244 F.3d at 698.

UNITED STATES DISTRICT COURT
For the Northern District of California